[No. 6171.   Decided January 2, 1907.]

TONY MILLER, *Appellant*, v. UNION MILL COMPANY,
*Respondent*.[1]

MASTER AND SERVANT—ASSUMPTION OF RISKS—VIOLATION OF STAT-
UTORY DUTY—REPEAL OF STATUTE—RETROACTIVE OPERATION.   The fac-
tory act of 1903, which required employers to safeguard dangerous
machinery and imposed a penalty for failure so to do, having de-
prived the master of the defense of assumption of risks, the repeal
of the act in 1905, did not operate retroactively, or affect causes of
action that arose under the Law of 1903 prior to its repeal.

Appeal from a judgment of the superior court for Che-
halis county, Irwin, J., entered October 25, 1905, upon the
verdict of a jury rendered in favor of the defendant, in an
action for personal injuries sustained by a slasherman
through contact with unguarded cogs in a sawmill.   Re-
versed.

*Govnor Teats*, for appellant.   The repeal of the factory act
has only a prospective operation.   24 Am. & Eng. Ency. Law
(2d ed.), 877 ; 26 Id. 758, 759 ; *Steamship Co. v. Joliffe*, 2
Wall. 450, 17 L. Ed. 805 ; *Hochstettler v. Mosier Coal & Min.
Co.*, 8 Ind. 442, 35 N. E. 927 ; *Gorman v. McAradle*, 67 Hun.
484, 22 N. Y. Supp. 479 ; *Vanderkar v. Rensselaer etc. R. Co.*,
13 Barb. 390 ; *Butler v. Palmer*, 1 Hill. 324 ; *International
etc. R. Co. v. Culpepper* (Tex. Civ. App.), 38 S. W. 818 ;
*Osborne v. Detroit*, 32 Fed. 36 ; *Wright v. Woods' Adm'r*,
16 Ky. Law 337, 27 S. E. 979 ; *Edmondson v. Kentucky
Cent. R. Co.*, 16 Ky. Law 459, 28 S. W. 789 ; *Denver etc.
R. Co. v. Woodward*, 4 Colo. 162 ; *Dixon v. Winnepeg Elec.
St. R. Co.*, 11 Manitoba 528 ; 2 Labatt, § 641 ; 5 Thompson,
Com. on Law of Negligence, § 6323 ; Dresser, Employers' Lia-
bility, p. 28 ; *Angell v. West Bay City*, 117 Mich. 685, 76
N. W. 128 ; *Broffee v. Grand Rapids*, 127 Mich. 89, 86
N. W. 401 ; *Bullock v. Durham*, 19 N. Y. 635 ; *Sehl v. Syra-*

[1]Reported in 88 Pac. 130.

*cuse*, 81 App. Div. 543, 81 N. Y. Supp. 482; *Lee v. Greenwich*, 48 App. Div. 391, 63 N. Y. Supp. 160; *Gmaehle v. Rosenberg*, 178 N. Y. 147, 70 N. E. 411; *Ryalls v. Mechanics' Mills*, 150 Mass. 190, 22 N. E. 766. To say the least, the question of assumption of the risks was for the jury. *Goldthorpe v. Clark-Nickerson Lum. Co.*, 31 Wash. 467, 71 Pac. 1091; *Shoemaker v. Bryant Lum. etc. Mfg. Co.*, 27 Wash. 637, 68 Pac. 380; *Christianson v. Pacific Bridge Co.*, 27 Wash. 582, 68 Pac. 191; *Gaudie v. Northern Lum. Co.*, 34 Wash. 34, 74 Pac. 1009; *Jancko v. West Coast Mfg. etc. Co.*, 40 Wash. 230, 82 Pac. 284; *Currans v. Seattle etc. Nav. Co.*, 34 Wash. 512, 76 Pac. 87; *De Mase v. Oregon R. & Nav. Co.*, 40 Wash. 108, 82 Pac. 170; *Hansen v. Seattle Lum. Co.*, 41 Wash. 349, 83 Pac. 102; *Rector v. Bryant Lum. etc. Co.*, 41 Wash. 556, 84 Pac. 7; *Creamer v. Moran Bros. Co.*, 41 Wash. 636, 84 Pac. 592; *Pearson v. Federal Min. Co.*, 42 Wash. 90, 84 Pac. 632.

*J. B. Bridges*, for respondent. The law of 1903 merely affected the remedy, the right to which was not a vested right. 26 Am. & Eng. Ency. Law. (2d ed.), 749; Cooley, Const. Lim. (7th ed.), 515; 6 Am. & Eng. Ency. Law (2d ed.), 947, 951, 952, 954; *McQuesten v. Morrill*, 12 Wash. 335, 41 Pac. 56; *Raymond v. Morrison*, 9 Wash. 156, 77 Pac. 318; *McAuliff v. Parker*, 10 Wash. 141, 38 Pac. 744; *Baer v. Choir*, 7 Wash. 631, 32 Pac. 776, 36 Pac. 286; *Hepburn v. Curts*, 7 Watts 300, 32 Am. Dec. 760; *McLimans v. Lancaster*, 63 Wis. 596; *Hamilton v. Hirsch*, 2 Wash. Ter. 222, 5 Pac. 215; Endlich, Interpretation of Statutes, §§ 285, 286, 287; Sutherland, Statutory Construction, § 482; *Danville v. Pace*, 25 Gratt. 1, 18 Am. Rep. 663; *Philbrick v. Philbrick*, 39 N. H. 468; *Klaus v. Green Bay*, 34 Wis. 628; *Bigelow v. Pritchard*, 21 Pick. 169; *Danley v. State Bank*, 15 Ark. 16; *Goshen v. Stonington*, 4 Conn. 209, 10 Am. Dec. 121; *Wooding v. Puget Sound Nat. Bank*, 11 Wash. 527, 40 Pac. 223. The action was brought as a common law action, because of failure

to give the notice required by Laws of 1905, § 9. *Plum v. Fond du Lac*, 51 Wis. 393, 8 N. W. 283; *Reed v. Madison*, 83 Wis. 171, 53 N. W. 547, 17 Am. St. 733; *Scurry v. Seattle*, 8 Wash. 278, 36 Pac. 145. This statute applies, although the action accrued before the passage of the act, as the time had elapsed after the enactment. *Packscher v. Fuller*, 6 Wash. 534, 33 Pac. 875; *Moore v. Brownfield*, 7 Wash. 23, 34 Pac. 199; *Borne v. Spokane*, 27 Wash. 719, 68 Pac. 386; *McQuesten v. Morrill*, 12 Wash. 335, 41 Pac. 56; *Daniels v. Racine*, 98 Wis. 649, 74 N. W. 553; *Susenguth v. Rantoul*, 48 Wis. 334, 4 N. W. 328. The plaintiff had plenty of time to comply therewith. *Southern Indiana R. Co. v. Peyton*, 157 Ind. 690, 61 N. E. 722. The plaintiff assumed the risk incident to working with a simple instrument like the hook in question. *Olson v. Doherty Lum. Co.*, 102 Wis. 264, 78 N. W. 572; *Beltz v. American Mill Co.*, 37 Wash. 399, 79 Pac. 981; *Decker v. Stimson Mill Co.*, 31 Wash. 522, 72 Pac. 98; *Steeples v. Panel & Folding Box Co.*, 33 Wash. 359, 74 Pac. 475; *Olson v. McMurray Cedar Lum. Co.*, 9 Wash. 500, 37 Pac. 679; *Week v. Fremont Mill Co.*, 3 Wash. 629, 29 Pac. 215; *Jennings v. Tacoma R. & Motor Co.*, 7 Wash. 275, 34 Pac. 937; *Hoffman v. American Foundry Co.*, 18 Wash. 287, 51 Pac. 385; *French v. First Ave. R. Co.*, 24 Wash. 83, 63 Pac. 1108; *Farrel v. Tatham*, 36 App. Div. 319, 55 N. Y. Supp. 199.

CROW, J.—This action was commenced by the plaintiff Tony Miller, against the defendant, the Union Mill Company, a corporation, to recover damages for personal injuries. Upon trial the jury returned a verdict for the defendant, and from a final judgment entered thereon, this appeal has been taken.

It appears from the evidence that appellant was employed as a slasherman in respondent's mill, in which was an elevated platform provided with live rolls for conveying slabs, cants, and lumber to where the appellant was working. The live

rolls were operated by a shafting and system of unguarded cogs. At the upper side of an inclined floor or deck, were a number of slasher saws, about four feet apart. The lower surface of the deck extended to the platform on which the live rolls were operated, being some two feet below the same. Certain skids extended from the platform and live rolls to the deck, and on the deck, extending from the skids to the saws, was a system of endless chains. Slabs or cants were sent down the live rolls to a point opposite the saws. The rolls then became dead, and it was the appellant's duty to pull or push the slabs from the rolls down the skids to the chains, and keep them straight, so that the chains might carry them up and across the deck to the slasher saws. In doing this the appellant was furnished and used a picaroon with which to push or pull the slabs. Appellant being on the deck with his back towards the saws, a slab was sent down, and the rolls were then stopped, becoming dead. He struck his picaroon into the slab to pull it from the rolls, down the skids and to the chains. The picaroon, being dull, slipped and caused the appellant to lose his balance. To prevent himself from falling onto the saws, he involuntarily threw himself forward, but just as he did so, the rolls were put in motion by another employee, and his left hand, coming in contact with the cogs, was severely injured.

The appellant alleged that the respondent was negligent, (1) in providing him with a dull picaroon unfit for use; (2) in failing to furnish him a safe place to work by not guarding the cogs, which could have been advantageously guarded. Respondent pleaded contributory negligence and assumption of risk. The accident occurred on May 17, 1905, while the factory act, Laws 1903, page 40, ch. 37, was still in effect, but the trial took place after it had been repealed by the factory act, Laws 1905, page 164, ch. 84. The court submitted to the jury the issues arising under appellant's charge of negligence relative to the picaroon; also the issue of contributory negligence. The appellant, however, having testi-

fied that he knew of the condition of the exposed and un-guarded cogs, the trial court held that he had, as a matter of law, assumed the risk of any injury he might have sustained by reason of the failure of the respondent to guard the cogs as required by law, and refused to admit evidence tending to show that they could have been advantageously guarded. The court also refused appellant's request for an instruction to the jury that the respondent, by reason of its failure to safeguard the cogs in compliance with the requirements of the factory act of 1903, had been deprived of its right to plead or rely upon the defense of assumption of risk.

The vital question before us is whether the rights and reme-dies of the parties are to be determined by, (1) the rules of the common law, (2) the factory act of 1903, or (3) the factory act of 1905. In no event can the act of 1905, or any of its provisions, be applicable to this action, or define the rights of the parties, the employment of appellant and the accident having both occurred while the act of 1903 was in effect. The repealing act did not become operative until June, 1905, having been passed without an emergency clause. It contains no provisions indicating any intention upon the part of the legislature to make it retroactive.

"It may be laid down as a fundamental rule for the con-struction of statutes that they will be considered to have a prospective operation only, unless a legislative intent to the contrary is expressed or necessarily to be implied from the language used or the particular circumstances, especially where to construe the act as retrospective in its operation would render it obnoxious to some constitutional provision, though the fact that the retrospective operation would not be unconstitutional does not require that the act be con-strued as retrospective. . . . The time of taking effect, and not the time of enactment, is the time to be taken into consideration in determining whether a statute is prospective or retrospective." 26 Am. & Eng. Ency. Law (2d ed.), 693.

The notice required by § 9 of the factory act of 1905 has no application to appellant's right to commence this action, nor

could the appellant be required to serve such notice before its commencement or as a condition precedent thereto.

There is no contention that any attempt had been made to safeguard the cogs, and although it was the common law duty of a master to furnish his servant a reasonably safe place to work, still the appellant, having known their unguarded condition, would, at common law, have assumed the risk of any danger or injury resulting from such exposed cogs.   In *Hall v. West & Slade Mill Co.*, 39 Wash. 447, 81 Pac. 915, this court held that the defense of assumption of risk was not available to a master when his servant was injured by reason of his failure to safeguard machinery in compliance with the act of 1903.   The respondent, however, in effect contends that, by reason of the repeal of said act, its defense of assumption of risk has been restored, its theory being that, as the act afforded the appellant a remedy which he did not have at common law, the remedy so given was removed when the statute was repealed by a subsequent act containing no saving clause.   In support of this theory respondent's counsel has prepared an able and exhaustive brief, presenting his contentions in a very forcible manner. We think, however, that he falls into error by assuming that the act of 1903 afforded the appellant a "remedy" of which he has since been deprived.   The act was a penal statute. This court, in *Hall v. West & Slade Mill Co.*, *supra*, when holding the master to have been deprived of the defense of assumption of risk, adopted the doctrine and reasoning of *Green v. Western American Co.*, 30 Wash. 87, 70 Pac. 310, and the leading case of *Narramore v. Cleveland etc. R. Co.*, 96 Fed. 298, 48 L. R. A. 68.   An examination of the *Narramore* case, upon which the *Green* case also rests, shows that Mr. Justice Taft held that the intention of the act then under consideration was to protect employees from injury from a very frequent source of danger; that it was passed in pursuance of the police power of the state, and expressly

provided for the criminal prosecution of delinquent companies as one mode of its enforcement. He assumed that the act did not exclude the operation of another and more efficacious method of compelling compliance with its terms. namely, the right of civil action against the delinquent company by its employee whom the statute sought to protect. In substance he contended that a servant could not, either expressly or impliedly, enter into any contract with his master stipulating that, although violating the penal statute, the master should not be deprived of the defense of assumption of risk. In the course of his opinion Mr. Justice Taft says:

"If, then, the doctrine of the assumption of risk rests really upon contract, 'the only question remaining is whether the courts will enforce or recognize as against a servant an agreement, express or implied on his part, to waive the performance of a statutory duty of the master imposed for the protection of the servant, and in the interest of the public, and enforceable by criminal prosecution. We do not think they will. To do so would be to nullify the object of the statute. The only ground for passing such a statute is found in the inequality of terms upon which the railway company and its servants deal in regard to the dangers of their employment. The manifest legislative purpose was to protect the servant by positive law, because he had not previously shown himself capable of protecting himself by contract; and it would entirely defeat this purpose thus to permit the servant 'to contract the master out' of the statute. It would certainly be novel for a court to recognize as valid an agreement between two persons that one should violate a criminal statute; and yet, if the assumption of risk is the term of a contract, then the application of it in the case at bar is to do just that."

The relation of master and servant existing between the respondent and the appellant in this case was a contractual one, and on the doctrine of the *Narramore* case, adopted by this court in the *Green* and *Hall* cases, the appellant could not by contract, either express or implied, have entered into

an agreement with the respondent stipulating that it should be entitled to plead the defense of assumption of risk, notwithstanding its failure to comply with the requirements of the factory act of 1903. This being true, the contractual duties and obligations resting upon respondent were such that the defense of assumption of risk could not be relied upon by it after its failure to comply with the statute. In view of the principles upon which the *Narramore* and *Hall* cases were decided, the inability of respondent to plead assumption of risk became a part of the contract of employment existing between the appellant and itself, and if we were to now hold that the repeal of the factory act of 1903 of itself, by mere operation of law, restored to the respondent the right to plead and rely upon the defense of assumption of risk, we would be announcing a doctrine the practical effect of which would be to retroactively create a new contract, under which appellant's rights would now be determined. It is elementary law that a party cannot be deprived of vested contractual rights by the subsequent repeal of a statute under the operation of which they were originally secured to him and became vested. In *Gorman v. McArdle*, 67 Hun. 484, 22 N. Y. Supp. 479, the court said:

"I think the position of appellant that the repeal by chapter 398, Laws 1890, of the statute requiring fire escapes, prevents plaintiff from maintaining the action, is not sound. It is true that when a statute gives a penalty, or expressly creates a cause of action, a repeal of such statute may extinguish any right of action existing thereunder, but section 10 of the act requiring fire escapes created no right of action, and prescribed no penalty to be recovered in an action. It made it the duty of the proprietor of a manufacturing establishment to maintain fire escapes, and the failure to perform this statutory duty has been held by the courts to be a negligent act, and that an employee injured by such negligent act may maintain an action for damages. The repeal of the statute does not extinguish plaintiff's right of action for an injury caused by defendant's negligent omission to provide

fire escapes as prescribed by the statute. The authorities cited by appellant are where a penalty is given or a cause of action expressly created by statute, in which cases it is held that a repeal of the statute extinguishes a right of action thereunder. Plaintiff in this case did not claim a penalty or sue for a cause of action created by a statute, but for the negligent act of the defendant, under the law as it stood when he was injured; and the repeal of that law does not affect his vested right of action. *Vanderkar v. Railroad Co.*, 13 Barb. 393; *Steamship Co. v. Joliffe*, 2 Wall. 450; *Butler v. Palmer*, 1 Hill 325. The judgment should be affirmed, with costs."

"The repeal of a statute has no effect on those rights and interests which have accrued under it, and which are past and closed; nor are any liabilities incurred under the repealed statute affected by the repeal, unless either they are released by the repealing statute, or the repeal includes the remedy for enforcing the liability. Sometimes the rule that rights accrued are not affected by the repeal is expressly declared by the repealing act, and in some jurisdictions it is declared by general statutes." 26 Am. & Eng. Ency. Law (2d ed), p. 746.

In 1891 the legislature of the state of Texas enacted a fellow-servant law, which it repealed in 1893, when reenacting the law with additional provisions, and the court of civil appeals of Texas, in *International etc. R. Co. v. Culpepper* (Tex. Civ. App.), 38 S. W. 818, said:

"It is also contended that the act of 1891 being repealed in 1893 by the new act on the subject of fellow servants requires this case to be considered as at common law, although the latter act contained and continued the same provision as in the former, so far as the issues here involved are concerned. In reference to the last of these questions, we have no hesitation in deciding that the law of 1891 is the law of this case. Its repeal would not affect its force as fixing or determining the liability of defendant in cases which arose under its provisions."

It is a rule of law, sustained by the great weight of authority, that if a statute imposes a penalty for the doing of

a particular act, although it does not expressly prohibit such act, the imposition of the penalty *prima facie* implies a prohibition, and all contracts in violation of the statute are illegal, just as if the statute had expressly prohibited the making of such contracts and declared them to be void. This penal act made it the duty of the master to safeguard the cogs, and imposed a penalty for failure so to do. Any contract of employment between the respondent and its servant, express or implied, which stipulated that it should not safeguard the machinery, or that in the event of its failure to do so it would be entitled to plead assumption of risk, would, under the *Hall* case, *supra*, be against the public policy of this state as exemplified in the act of 1903, and therefore void. 9 Cyc. 476; Bishop, Contracts, §§ 479, 549; *Woods & Co. v. Armstrong*, 54 Ala. 150, 25 Am. Rep. 671; *Dillon & Palmer v. Allen*, 46 Iowa 299, 26 Am. Rep. 145; *Smith v. Robertson*, 106 Ky. 472, 50 S. W. 852, 45 L. R. A. 510.

The doctrine laid down in the *Hall* case has, since its announcement, been repeatedly recognized and followed by this court. *Whelan v. Washington Lumber Co.*, 41 Wash. 153, 83 Pac. 98; *Hoveland v. Hall Bros. etc.*, 41 Wash. 164, 82 Pac. 1090; *Erickson v. McNeeley & Co.*, 41 Wash. 509, 84 Pac. 3; *Rector v. Bryant Lumber etc. Co.*, 41 Wash. 556, 84 Pac. 7; *Johnston v. Northern Lumber Co.*, 42 Wash. 230, 84 Pac. 627.

It would be a harsh ruling for this court to now announce a doctrine the substantial effect of which would be to hold that, simply because the act of 1903 had been repealed, this appellant should be deprived of his right of action against respondent for damages arising out of the breach of their contract of employment. Two employees in different mills might receive like injuries on the same day, and one bringing his action for damages in the courts of some of the larger counties of this state, having several departments, could se-

cure judgment prior to the time the repealing act would take effect, while the other, in a court holding sessions less frequently, might, although exercising the utmost diligence, be unable to secure a trial until after the repealing act took effect. Under such circumstances, one could recover while the other would be deprived of his right of action. Such a holding would be unjust, and ought not to be announced by any court.

We are of the opinion that the repeal of the factory act of 1903 did not restore to the respondent the right to plead the assumption of risk, nor did it deprive the appellant of the right to have this case tried in contemplation of such act, the same having been in full force and effect at the date of the accident. This being true, the honorable trial court erred in refusing to charge the jury that the respondent was not entitled to plead the defense of assumption of risk. The judgment is reversed, and the cause remanded for a new trial.

MOUNT, C. J., HADLEY, DUNBAR, and ROOT, JJ., concur.