SMITH et al. v. FLEMING et ux. (No. 1214.)*

(Court of Civil Appeals of Texas. El Paso. May 12, 1921.)

1. Witnesses ⚬—150(2).—Fraudulent declarations of lessee since deceased held admissible in action against assignees to cancel lease.

In action against assignees of oil and gas lease to cancel lease, plaintiff lessor was not prohibited by reason of Rev. St. 1911, art. 3690, relating to testimony as to declarations by a decedent from testifying as to fraudulent declarations by lessee, since deceased and against whom the suit had been dismissed, made at the time of the execution of the lease in reference to the term for which the lease was taken and as to the amount of rentals agreed to be paid; the lessee having prepared the lease.

2. Evidence ⚬—434(6).—Testimony held not to vary written instrument.

In action to cancel an oil and gas lease, it would not be varying the instrument by parol testimony to permit lessor to testify that lessee prepared the lease to run for a period of six months, and after the delivery of the lease struck out the words "six months" and inserted the words "ten years."

3. Evidence ⚬—135(1)—No error in refusing evidence of other fraudulent transactions.

In action to cancel oil and gas lease on ground of alterations in instrument after delivery, court did not err in refusing to permit defendant assignees to give evidence of other leases taken by lessee with other parties in the same vicinity; the purpose being to show that the same erasures and interlineations appear in them as in the lease in question.

4. Appeal and error ⚬—1066 — Reversible error to submit issue without evidence to support it.

In action to cancel oil and gas lease on ground that alterations were made after delivery, it was reversible error to submit to the jury issue as to whether interlineations were made before or after the execution and delivery of the lease by striking out a six-months term and inserting a ten-year term, the fact clearly appearing, from the instrument itself, that there was no six-month term in the lease except as to the payment of rentals, and such term was not erased and no term inserted instead, the issue being without evidence to support it.

5. Mines and minerals ⚬—59—Issue submitted held without basis in pleading in suit to cancel lease.

An issue whether lessee represented to lessor that lease was only for a period of six months was without basis in the pleading, and should not have been submitted in an action to cancel the lease, where petition alleged the agreement was that the term of the lease was to be for only six months, and that lessee assured lessor that the lease had been so prepared; there being no allegation that lessee represented to lessor that the lease was only for a period of six months.

---

**6. Mines and minerals ⊚⇒58—Fraudulent statement as to term ground for avoiding lease.**

Where lessee drew up an oil and gas lease, and lessors relied on his statement as to the time the lease would run, and believed that the lease was written for only six months instead of ten years, and, to induce that belief, lessee pointed out a six months' clause in the lease as the term for which it was to run and remarked, "I will make it for six months so you will understand it," and lessors believed the six months' time had reference to the time that lease was to run and acted upon it, but in truth it had reference instead to the payment of rentals, and not to the time the lease was to run, and though lessor might have ascertained by the exercise of ordinary care the application of the six months' clause, such representation would be sufficient ground if promptly acted upon to avoid the lease.

**7. Mines and minerals ⊚⇒58—Lessor estopped to deny validity of lease fraudulently obtained.**

Lessor under oil lease was estopped to set up fraud of lessee in obtaining the lease by telling him that it was for six months instead of ten years, where he accepted rentals after the expiration of the six months knowing that the lease had been assigned, and such was true even though the lease was altered after execution and delivery, changing the term.

Appeal from District Court, Eastland County; E. A. Hill, Judge.

Action by S. A. Fleming and wife against C. P. Smith and others. Judgment for plaintiffs, and certain defendants appeal. Reversed and rendered.

Scott, Brelsford & Smith, of Cisco, for appellants.

W. O. Morton, of Breckenridge, and Burkett, Anderson & Orr, of Eastland, for appellees.

WALTHALL, J. S. A. Fleming and wife brought this suit on the 14th day of June, 1919, against J. F. Colt, C. P. Smith, and R. N. Dorsey to cancel an oil and gas lease on 181 acres of land in Eastland county, executed and delivered by them to J. F. Colt on the 26th day of November, 1917.

The oil and gas lease recites that the lessors, for the consideration of $181 paid and the covenants and agreements therein contained, grant, bargain, and sell all the oil and gas in and under the land described, and grant, demise, lease, and let said land itself unto the lessee for the sole and only purpose of operating for and producing oil and gas thereon and therefrom, with rights of way, etc., and to have and to hold said lands and all rights and privileges granted hereunder to and unto the lessee, his heirs and assigns, for the term of ten years from the date hereof, and as much longer as oil and gas is produced from said land in paying quantities. The lease provides that in consid-eration of the premises the lessee should deliver to the lessor an eighth part of the oil produced and saved from the leased premises as a royalty, or to pay the market price therefor. The term of the lease as printed in the instrument was five years. The printed word "five" is erased and the word "ten" is written in red ink instead wherever the words "five years" occurs in the instrument, thus making the term of years for which the lease was to run to read ten years instead of five years.

The instrument provides:

"If operations for the drilling of a well are not commenced on said land on or before the 1st day of June, 1918, this lease shall terminate as to both parties, unless the lessee, on or before that date, shall pay or tender the lessor the sum of forty-five ($45.25) and $25/100$ dollars in the manner hereinafter provided, which payment or tender shall operate as a rental for six months from and after the date last above stated."

In stating the rental period in the above quotation the space for the number of months is left vacant in the printing, and the word "six" is written therein, thus making the instrument to read as above quoted.

Without stating the verbiage of the petition, plaintiffs alleged that it was never understood or agreed that the terms of said lease should extend for a longer period than six months from its date, unless drilling for a well should be sooner begun, in which event it was to remain in full force as long as oil and gas might be produced in paying quantities; that Colt undertook to reduce said agreement to writing; that plaintiffs were inexperienced, and for that reason relied upon him to incorporate in the instrument the meaning of the contract and agreement which had been made between them; that Colt had with him a form of printed lease contract containing blank spaces for the insertion of dates, term of years, consideration, description of land, etc.; that in filling out the lease Colt inserted words therein which made it appear that the lease was to run for a period of six months, but fraudulently and without plaintiff's knowledge or consent, and after the delivery of the lease, changed said period from six months to ten years in the printed portion, which Colt had assured plaintiffs provided for only a period of six months; that in filling out the consideration in said lease as paid Colt falsely inserted the sum of $181 when same was not the true consideration, and true consideration being 25 cents per acre, or $45.25.

Plaintiffs allege that after the lease contract was written Colt submitted it to plaintiffs, but they did not read all of the lease, and only glanced over it, and, seeing that same provided for only six months in one

place, relied upon what Colt said, that it was for only six months; that after the lease was executed and delivered Colt changed the lease by altering and erasing the words "six months" and inserting in lieu thereof the words and figures "ten years." Plaintiffs further allege that Colt, in taking the lease, was acting for himself and as the agent and representative of C. P. Smith and R. N. Dorsey, and that they were charged with notice of said act; that on December 10, 1917, Colt assigned the lease to C. P. Smith, and Smith assigned one-eighth to R. N. Dorsey, and that Smith and Dorsey were each well aware of the changes and alterations made by Colt in the lease after its execution; plaintiffs did not discover the alterations in the lease until the latter part of July, 1918; that plaintiffs consulted an attorney who advised that the lease could not be canceled, and that thereafter he consulted another attorney who advised that the lease could be canceled; that after that date plaintiffs refused to accept any further rentals, and treated the lease as canceled.

Plaintiffs pleaded in the alternative that, if plaintiffs did not agree to drill a well within any definite time, then they pleaded that the contract was unilateral.

Pending the suit, and before trial, Colt died, and the suit was dismissed as to him.

Smith and Dorsey answered by general demurrer, special exceptions, general denial, special denial that Colt was their agent in taking the lease; denied any knowledge of the circumstances attending the execution of the lease; that Colt was not acting for or on behalf of either of them; that they purchased the lease for a valuable consideration and without any notice of any vice in its execution, and knew nothing of the attending circumstances surrounding the same, and that they were innocent purchasers for valuable consideration paid and without notice; that they are legal and equitable holders and owners of the lease by assignment, and have paid all the rental payments due under the terms of the lease, and have complied with the terms of the lease. They pleaded estoppel of plaintiffs to deny the legality of the lease by reason of having accepted the annual rental on said lease.

The cause was tried with a jury, and the case submitted on special issues, resulting in a judgment in favor of plaintiffs canceling the lease.

The jury found:

(1) The interlineations in red ink upon the lease were made after Fleming and wife signed the lease.

The jury made no answers to questions 2 and 3.

(4) At the time the lease was executed by Fleming and wife, Colt represented to them that the lease was only for a period of six months.

(5) Fleming and wife relied solely upon the representation made by Colt that the lease ran for a period of only six months.

(6) Smith, when he purchased the lease from Colt, when he noticed interlineations upon said instrument, did not use such ordinary care and reasonable diligence as an ordinarily prudent man would have used under like or similar cicumstances to ascertain the status of the real or apparent irregularity appearing on the face of said instrument.

(7) Dorsey purchased an interest in said lease for a valuable consideration without notice of the circumstances attending the execution of said lease.

(8) Dorsey in the purchase of the interest in the lease claimed by him did not exercise "reasonable care" as that term is hereinbefore set out.

[1] It was not error, as submitted in the first assignment, to permit Fleming to testify, over objections of Smith and Dorsey, in the suit against them, by reason of article 3690, Revised Statutes, as to declaration made by Colt at the time of the execution of the lease in reference to the term for which the lease was taken, and as to the amount of rentals agreed to be paid.

[2] It would not be varying the original instrument by parol testimony as insisted under the second proposition under the first assignment to permit Fleming to testify that Colt prepared the lease to run for a period of six months, and after the delivery of the lease struck out the words "six months" and inserted the words "ten years." It would be more a question of the weight of the evidence to sustain the allegation that the original lease was changed, and not one as to the admission of the evidence offered. But the original lease was introduced in evidence, and is found in the record, and shows on its face that the clause referred to by the witness, viz. "which payment or tender shall operate as a rental for six months from and after the date last above stated," has not been erased, nor the words "ten years" written in their stead. The six months' clause does not appear to be erased.

[3] The court was not in error, we think, as claimed by appellants in the second assignment, in refusing to permit the introduction in evidence in connection with the evidence of witness Willis of other leases taken by Colt with other parties in the same vicinity; the purpose being to show that the same erasures and interlineations appear in them as in the Fleming lease. This was a special contract with Fleming, and we think it would not be proper to turn aside and try out other transactions on the ground that, in some respects, there appears to be a similarity of conditions, as to interlineations with red ink, as would appear on the face of the instruments offered. Willis did not know anything about the interlineations on

this or the offered instruments; said he did not see Colt make the interlineations on the lease in question; he did not see the interlineations; did not know this lease or other leases were interlined; would not say it was interlined before Fleming signed it; he did not know whether the Fleming lease was drawn for a five-year or a ten-year lease, but thinks it was a ten-year lease. Had Colt been a witness and had himself testified to the times this and other leases were interlined, the probative force of the interlineations on leases other than the instant lease would have been no more than an inference, and, we think, self-serving.

In view of the disposition we make of the case, we deem it unnecessary to discuss assignments 4, 9, and 13, complaining of the refusal of the court to submit requested special instructions.

[4] Was it reversible error, as submitted in the fifth assignment, to submit to the jury issue No. 1, as to whether the interlineations were made before or after the execution and delivery of the lease, by striking out the six-month term and inserting the ten-year term? The fact clearly appears from the instrument itself that there was no six-month term in the lease except as to the payment of the rentals, and such term was not erased, and no term inserted instead, as we construe the allegation in the pleading. The issue, as pleaded, and as submitted, is without evidence to support it.

[5] Appellants' seventh assignment is directed to the submission of the fourth issue: "Did J. F. Colt represent to them [Fleming and wife] that said lease was only for a period of six months?" The jury answered "Yes." As we construe the petition, it does not allege that Colt represented to Fleming and wife that the lease as prepared by him was for a period of only six months. The petition alleges the agreement was that the term of the lease was to be for only six months, and that Colt assured Fleming and wife that the lease had been so prepared, but there is no allegation that Colt represented to them that said lease was only for a period of six months. The issue submitted is without basis in the pleading and should not have been submitted.

The eighth assignment complains of the submission of the fifth issue, on the ground that under the evidence Fleming and wife were bound by the terms of the lease as finally written, they having read the lease, and testified that it was originally written for six months, and thereafter changed to ten years.

The fifth issue did not submit the question of the change in the writing, but the issue submitted was: Did Fleming and wife rely solely upon the representation by Colt that the lease (as written) would run for six months only?

The petition alleged that the agreement was that the lease when written was to be for a period not exceeding six months from its date unless the drilling of a well for oil should begin prior to the expiration of that time, or a new agreement entered into extending the term of the lease; that they were not familiar with or skilled in the forms, reading, or interpretation of such instruments, and that Colt was, and for that reason they relied upon him to write into the the instrument before it was signed the intent and meaning of the agreement as had been made between them; that in filling out the blank form of the lease in the blank space for inserting the period for which the lease was to run Colt inserted words which made it appear that the lease was to run for six months, and led plaintiffs to believe that the lease was for six months, but fraudulently and after the lease was delivered Colt changed the time in the printed portion of the lease from six months to ten years. The lease provides, and without any interlineations as to that provision, that—

"If operations for the drilling of a well are not commenced on the said land on or before the 1st day of June, 1918, this lease shall terminate, unless the lessee, on or before that date shall pay the lessor the sum of $45.25 in the manner hereinafter provided."

It seems to us that the pleading is somewhat confused in its statements as to what Fleming and wife were led to believe the writing was to be when written, and what it was when written, and the fraud in the change made as to the time for which the lease was made to run. The issue submitted was as to the representations made by Colt to Fleming and wife, that the lease as written would run for only six months. The assignment embraces issues pleaded, but not submitted in the fifth issue.

[6] Was it reversible error to submit the issue whether Fleming and wife relied solely upon the representation (the pleading reads assurance) of Colt that the lease (necessarily, as written) would run for six months only? We think that the well-established rule might be applied to the facts presented to the effect that, where representations were of a character to induce Fleming and wife to rely upon what Colt said as to the time the lease would run, and they believed that the lease was written for only six months, and to induce that belief Colt pointed out a six months' clause in the lease as the term for which it was to run and remarked, "I will make it for six months so you will understand it." and Fleming believed the six months' time had reference to the time the lease was to run, and acted upon it, but in truth it had reference instead to the payment of rentals, and not to the time the lease was to run, and although Fleming might have ascertained by the exercise of ordinary

care the application of the six months' clause, such representation would be sufficient ground, if promptly acted upon, to avoid the lease. Labbe v. Corbett, 69 Tex. 503, 6 S. W. 808; Griffeth v. Hanks, 46 Tex. 217; Holstein v. Adams, 72 Tex. 485, 10 S. W. 560; Wright v. United States Mortg. Co., 42 S. W. 789; International, etc., R. Co. v. Harris, 65 S. W. 885, affirmed in 95 Tex. 346, 67 S. W. 315. See, also, Hall v. Grayson County Nat. Bank, 36 Tex. Civ. App. 317, 81 S. W. 762, stating the rule to be that one induced by reliance on false representations to enter into a contract is not precluded from defeating its enforcement by the fact that by ordinary diligence he could have discovered their falsity before acting upon them. Fleming testified that the parol contract that was to be expressed in the lease·was for a six months' time; that he relied upon what Colt said the lease contained, and that, while Colt submitted the lease to them to read, they did not read all of it, but only glanced over it, and, seeing the six months' clause in one place, they relied upon what Colt said, that the lease was only for six months.

Under the tenth assignment it is insisted that the findings of the jury on the special issues submitted are insufficient to sustain the judgment canceling the lease.

We might concede the correctness of the proposition but for the matter discussed under the eighth assignment. It seems clear to us that Fleming and wife had in mind no period of time other than for six months.

It is quite evident that Fleming was mistaken as to the erasure of the six months' clause in the lease, but the jury found in answer to the fifth issue that Colt represented to them that said lease was for only six months, a very pertinent and distinct fact, and that Fleming and wife relied solely upon the representation made by Colt as to the fact expressing, as Fleming 'understood it, the period of time for which the lease was to run. If we are not in error in our conclusion that such finding constitutes a cause for the cancellation of the lease, the judgment should be sustained, if not defeated by other and subsequent matters discussed under another assignment.

What we have said in discussing other assignments sufficiently indicates our views on the matters complained of in the eleventh and twelfth assignments.

This brings us to the fourteenth assignment.

[7] Defendants pleaded an estoppel on the part of Fleming and wife in that they received and accepted two rentals falling due under the terms of the lease as written, one falling due on May 26, 1918, and one falling due on November 26, 1918. Now, whatever Fleming might have been led by Colt to believe as to the period of time for which the lease was

to run, he knew that he was accepting rentals long after the lease had expired by its own terms, as he was led 'to believe. Fleming knew that neither Colt nor Smith and Dorsey had commenced to drill a well upon the land in controversy at the end of the six months' period. Fleming knew at the end of the eighteen months' period, when he accepted the third payment, that a well had not been drilled on the land. Fleming knew that on the 10th day of December, 1917, Colt assigned the lease to Smith, and that on the 11th day of December, 1917, Smith had assigned an interest in the lease to Dorsey, both assignments having been duly recorded in 1917. Fleming had actual knowledge of the interlineations in the lease changing the printed period of time from five to ten years in July, 1918.

The above facts are not controverted. Whatever might be said primarily of the deception or fraud of Colt in leading Fleming and wife to believe that the lease extended for a period of six months only, he was undeceived at the end of the six months' period, and other periods when additional rentals, as above, were accepted by him, and by accepting the rentals reaffirmed the lease.

We have concluded that as a matter of law, by reason of the facts, he is now estopped from having a cancellation of his lease by reason of the fraud of Colt in inducing the belief that the period of the lease was for six months only, and his sole reliance upon what Colt had led him to believe.

For the reason stated, the cause is reversed, and, the facts having been fully developed, judgment is here rendered for appellants.

Reversed and rendered.

---

⟨⎯⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes